400 So.2d 1123 (1981)
Iona RYDER
v.
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Pinecrest State School.
No. 13992.
Court of Appeal of Louisiana, First Circuit.
April 13, 1981.
*1124 F. Jean Pharis, Pharis & Pharis, Alexandria, for appellant.
E. Michael Harrison, Staff Atty., Dept. of Health and Human Resources, Baton Rouge, for appellee.
Before COVINGTON, CHIASSON and LEAR, JJ.
LEAR, Judge.
This appeal was taken by Iona Ryder from an adverse ruling of the State Civil Service Commission upholding her termination by the appointing authority from her previous state employment.
Prior to her termination, appellant had been a permanently classified state employee, having the civil service designation of Cottage Parent II, at the Pinecrest State School in Pineville, Louisiana. At the time of her termination, appellant had been employed at the Pinecrest for some thirteen years.
By letter dated March 22, 1979, over the signature of Coates Stuckey, Superintendent, appellant was notified that she was being terminated from her position as Cottage Parent II as of March 28, 1979. As grounds for her dismissal, the appointing authority assigned violation of its Blue Book Directive XX-X-X-XX and clause number three (3) of the "Rules Governing Conduct of Employees",[1] and in pertinent part the letter of dismissal reads as follows:

*1125 "You have been heard to call resident Hazel Dupas a `bitch' and `Sit your black ass down.' On January 26, 1979 on Cottage 214 at approximately 2:00 p. m., the 6-2 shift and 2-10 shift were discussing recent troubles on the cottage. The main topic of conversation was resident M. Estopinal's bruises. Resident Dorothy Lachney accused the evening shift of forcing her to tell Mr. Bordelon the bruises happened on the morning shift. You screamed at her saying, `You bitch, you are telling a goddamned lie.' You grabbed Dorothy by the lapel of her jacket and used a lot of abusive language.
"By your own admission you have used the words `hell' and `damn' on the cottage. You have been seen throwing Frances Weaver onto the couch and holding her down, then calling employees to help hold her until she could be put in restraints. You have been heard cursing Frances Weaver and calling her a `goddamned little son-of-a-bitch'."
A timely appeal was filed by appellant, through counsel, on April 20, 1979, wherein appellant denied the allegations of misconduct and alleged that her removal was discriminatory and without legal cause. By its opinion filed on October 5, 1979, the commission ruled that all of the allegations contained in the dismissal letter, except those relating to the January 26, 1979, incident, were defectively vague and, therefore, limited the merits of the appeal to the sole remaining allegation charging appellant with having screamed at resident Dorothy Lachney, "You bitch, you are telling a goddamned lie" and with having grabbed Lachney by the lapel of her jacket at Cottage 214 at approximately 2:00 p. m. on January 26, 1979. In that opinion, the commission also ruled that appellant had not alleged sufficient facts to support her conclusion of discrimination, and summarily dismissed that portion of her appeal.
A public hearing was held in Pineville, Louisiana, on October 16, 1979, before a referee appointed by the commission.
While appellant's application for appeal to this court assigned numerous errors, because of our holding herein, we find it necessary to address assignments of error numbers three, four and eleven only and therefore decline to review those other errors assigned by appellant.
Article 10, Section 8(A) of the Louisiana Constitution of 1974 provides that no person who has gained permanent status in the classified state civil service shall be subjected to disciplinary action, such as appellant's dismissal, except for cause expressed in writing. It further provides that the burden of proof on appeal is on the authority to fully support that the dismissal of the employee was for "cause". Stiles v. Department of Public Safety, Drivers' License Division, 361 So.2d 267 (La.App. 1st Cir., 1978). Thus, in reviewing the commission's action, we must determine whether the facts are supported by sufficient and competent evidence and, second, whether the facts, as a matter of law, justify the action taken. Stiles, supra.
From the testimony received by the commission, it is undisputed that at approximately 2:00 p. m. on January 26, 1979, in Cottage 214 at the Pinecrest State School, appellant and a number of other employees were engaged in an informal discussion concerning bruises received by one of the residents. In discussing this situation, one of those present suggested that another resident, Dorothy Lachney, was responsible for part of the bruises. Frances Rushing, one of the employees present, then called Dorothy Lachney to the desk and asked her about this, to which Lachney replied that the evening shift forced her to say that the morning shift was responsible. At this point, the testimony of the witnesses differs substantially.
*1126 Frances Rushing, called by the authority, testified that, in response to Dorothy Lachney's statements, appellant grabbed Dorothy Lachney's collar and pulled it up under her chin and said to Dorothy Lachney, "You bitch, you're a god damn liar." She later testified that appellant did not shake the resident and that appellant's touching of the resident was "a gesture of simply closing the collar of her [Dorothy Lachney's] jacket...." The resident herself, however, testified that appellant grabbed her hard by the clothes and pushed her back, telling her to sit down.
Appellant, testifying in her own behalf, while admitting she touched the resident's clothes, denied grabbing or pulling the resident's clothes or shaking her. Appellant further testified that she told the resident not to lie and that she was tired of the resident's going from shift to shift lying and creating trouble. Appellant specifically denied cursing at the resident.
Rose Gilmore, called by appellant, testified that she was present with appellant and the others at the time of this incident and further that she only heard appellant say to Dorothy Lachney, "Don't lie." She also testified that she did not observe Ms. Ryder place her hands on Dorothy Lachney and specifically did not see her grab the resident by the collar. She further testified that, while she was talking to another employee and not paying close attention to appellant's conversation, she would have been near enough to have heard Ms. Ryder make other statements had she done so. She stated specifically that she heard no abusive language.
The testimony of the authority's two witnesses contains a number of contradictions and inconsistencies, while appellant's testimony appears to be substantially corroborated by a disinterested witness, Rose Gilmore. It should also be noted that, in discharging its burden of proof, the authority failed to call three other witnesses who were present at this incident. Because their testimony would logically be part of the authority's case, and their failure to testify being unexplained, it must be presumed that their testimony would not have aided the authority's case.
In reviewing the testimony received and considered by the commission, and its findings, we find that the appointing authority, in the previous public hearing on this matter, failed to carry its burden of proof in establishing the conduct upon which appellant's termination was based. We conclude, therefore, that the commission's decision is manifestly erroneous.
As pointed out above, disciplinary action against a classified employee must be based on legal cause. Legal cause for disciplinary action against a classified employee has been defined by the Louisiana Supreme Court as conduct which impairs the efficiency of the public service, and which bears a real and substantial relation to efficiency and orderly operation of the public service in which the employee is engaged. Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962).
Obviously, dismissal from permanent employment is the most extreme form of disciplinary action that can be taken against a classified state employee. Thus, cause justifying some lesser form of disciplinary action might not justify a dismissal. Repeated improper conduct after lesser disciplinary action has been taken, the totality of individual lesser offenses or even a single particularly aggravated incident have all been found to constitute legal cause for dismissal. Some examples of this are: insubordination and a stated refusal to comply with regulations, Matter of Geiger, 337 So.2d 549 (La.App. 2nd Cir., 1976); severe beating of fellow employees, Branighan v. Department of Police, 362 So.2d 1221 (La. App. 4th Cir., 1978), writs denied 365 So.2d 247 (La.1978); an employee slapping and cutting (with a pen knife) a "student" of L.T.I., Williams v. Department of Corrections, LTI-Baton Rouge, 316 So.2d 411 (La. App. 1st Cir., 1975), writs denied 327 So.2d 563 (La.1975).
Only the January 26 incident was considered by the commission. Even if we accept this incident as sufficiently proven, *1127 which we do not, the record indicates that appellant's conduct on that date was not prolonged nor particularly aggravated. Appellant did not strike the resident, and it appears from the record that no serious or lasting damage resulted from this incident. When viewed within the context of the staff's previous experience with the resident and appellant's knowledge of the resident's prior threats against her, appellant's conduct, even if proven, is not so extreme as to justify dismissal.
While we agree with the commission's finding that appellant's position demands a high standard of conduct, we believe that, as applied in this case, the commission's judgment of this "single incident" is manifestly incorrect. We, therefore, find that the conduct alleged by the authority, even if proven, is not sufficient legal cause for appellant's termination.
Concerning appellant's claim for attorney's fees, Act 461 of the 1980 Regular Session provides for an award of attorney's fees in appeals to the State Civil Service Commission. In enacting Act 461, the legislature did not elect to make it retroactive, nor did it specify an effective date. Therefore, Act 461 became effective on the sixtieth day after the final adjournment of the regular session of 1980, which occurred on July 14, 1980. This appeal was taken to and decided by the State Civil Service Commission prior to the effective date of Act 461. Additionally, the appeal of the commission's decision was taken by appellant on July 23, 1980, and the record lodged in this court on September 8, 1980. Therefore, the act not being retroactive, appellant is not entitled to an award of attorney's fees in connection with her appeal to the State Civil Service Commission.
For the above reasons, the decision of the State Civil Service Commission is reversed, plaintiff is ordered reinstated with back pay from the date of discharge, March 28, 1979, and with retention of all ancillary benefits and status. Appellee is to pay costs of this appeal in the amount of $25.00.
REVERSED.
CHIASSON, J., concurs in holding that authority failed to carry its burden of proof and as to attorney's fees.
NOTES
[1] Rule 3 states: "3. Never curse, taunt, or otherwise verbally abuse any resident." Exhibit DHHR-1, a copy of rules, was introduced; it bears the date of July 13, 1966 and the signature of Ms. Ryder, acknowledging that she had read them and had received a copy thereof. At the top of the page of rules is the caveat, in upper case letters: "THE FOLLOWING RULES WILL GOVERN THE CONDUCT OF ALL EMPLOYEES OF PINECREST STATE SCHOOL. FAILURE TO COMPLY WITH THESE RULES MAY RESULT IN DISMISSAL."