978 So.2d 947 (2007)
Sharon NORBERT
v.
LSU HEALTH SCIENCES CENTER, University Medical Center.
No. 2007 CA 0161.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
Rehearing Denied December 27, 2007.
*948 Daniel M. Landry, III, Lafayette, LA, for Sharon Norbert.
Martha K. Mansfield, Baton Rouge, LA, for Appellee LSU Health Sciences Center University Medical Center.
Robert R. Boland, Jr., Baton Rouge, LA, for Anne Soileau, Director, Department State Civil Service.
Before WHIPPLE, GUIDRY, AND HUGHES, JJ.
GUIDRY, J.
In this appeal, Sharon Norbert seeks review of a decision rendered by the Civil Service Commission (Commission), finding that LSU Health Sciences Center, University Medical Center (LSU) had shown cause for terminating Norbert and had acted in good faith. For the reasons that follow, we affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY
Norbert was employed by LSU as a hospital admission technician for over twenty-two years. As an admission technician, Norbert worked from 6:30 a.m. to 3:00 p.m. and was responsible for admitting, screening, and discharging patients, which took place throughout the hospital. Additionally, Norbert was a seasonal employee of H & R Block, having worked from January through April for the past twelve years. Norbert worked approximately two evenings per week for a total of about eight hours and most of her duties could be performed while sitting at a desk.
In 1998, Norbert injured her neck and back while at work for LSU and, in addition to receiving sporadic workers' compensation benefits, was accommodated with a special lumbar chair. In addition, LSU accommodated Norbert's January 20, 2004 request that she not work evenings or nights, because she takes her medicine and lumbar injections in the afternoon and rests her body at night.
Thereafter, on March 4, 2004, Norbert was involved in an automobile accident while on annual leave from LSU and aggravated her pre-existing neck and back injuries. Accordingly, pursuant to her doctor's recommendation that she not work, Norbert requested and received paid sick leave and family medical leave from *949 March 8, 2004 through April 5, 2004. However, during this time, Norbert continued to work her second, seasonal job at H & R Block. By letter dated June 14, 2004, LSU advised Norbert that it was removing her from her permanent position effective June 21, 2004, for falsely representing that she could not work for LSU, while at the same time working a second, seasonal job at H & R Block. Norbert appealed LSU's decision to the Commission, whereupon a referee determined that LSU had proved cause for Norbert's dismissal and denied Norbert's appeal.[1] Norbert filed an application for review of the referee's decision with the Commission, which was denied. Norbert now appeals these decisions, asserting that the Commission erred in finding LSU established that it acted in good faith and with legal cause in terminating her employment.

DISCUSSION
Decisions of Commission Referees are subject to the same standard of review as decisions of the Commission itself. Decisions of the Commission are subject to the same standard of review as a decision of the district court. Accordingly, when reviewing the Commission's findings of fact, the appellate court is required to apply the manifestly erroneous or clearly wrong standard of review. However, in evaluating the Commission's determination as to whether the disciplinary action taken by the appointing authority is based on legal cause and commensurate with the infraction, the reviewing court should not modify or reverse the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Usun v. LSU Health Sciences Center Medical Center of Louisiana at New Orleans, 02-0295, 02-0296, p. 4 (La.App. 1st Cir.2/14/03), 845 So.2d 491, 494.
Article 10 § 8(A) of the Louisiana Constitution provides that a classified employee may not be "subjected to disciplinary action except for cause expressed in writing." "Cause" sufficient for the imposition of discipline means "conduct that impairs the efficiency of the public service and bears a real and substantial relation to efficient and orderly operation of the public service in which the employee is engaged." Marsellus v. Department of Public Safety and Corrections, 04-0860, p. 5 (La.9/23/05), 923 So.2d 656, 660.
In the instant case, LSU terminated Norbert for falsely representing that she was incapable of working for LSU, while at the same time working a second, seasonal job at H & R Block. Particularly, LSU asserted that Norbert, while on paid sick leave and family medical leave, and despite having previously requested that she not work evenings and nights due to her workers' compensation-related injury, worked evenings at H & R Block.
Civil Service rule 11.13(a) provides that sick leave may be utilized for: (1) illness or injury preventing an employee from performing his usual duties, or (2) medical, dental, or optical consultation or treatment. Using sick leave for any purpose other than the ones listed in Rule 11.13 is a misuse of sick leave and amounts to misconduct constituting cause for discipline. See Sterling v. Department of Public Safety & Corrections, Louisiana State Penitentiary, 97-1959, 97-1960, 97-1961 (La.App. 1st Cir.9/25/98), 723 So.2d 448, *950 453 and 454; see also Ferguson v. Department of Health and Human Resources, Office of Management and Finance, 451 So.2d 165, 168 (La.App. 1st Cir.1984).
As stated above, Norbert was a twenty-two year employee of LSU. She was involved in an automobile accident on March 4, 2004, and aggravated a pre-existing back and neck injury, for which she had received accommodation and workers' compensation from LSU. Pursuant to her doctor's specific recommendation that she was to have "no work status" from March 8, 2004 through April 5, 2004, Norbert received paid sick leave and family medical leave from LSU. However, during this time, Norbert continued to work her second, seasonal job at H & R Block, approximately two nights per week. Accordingly, based on our review of the record, we find that LSU established that Norbert abused the sick leave policy by claiming that she could not work for LSU due to her injuries and receiving leave, while continuing to work her second job at H & R Block, despite her doctor's recommendation that she have "no work status." (Emphasis added.)
However, dismissal from permanent employment is the most extreme form of disciplinary action that can be taken against a classified state employee. Thus, cause justifying some lesser form of disciplinary action might not justify a dismissal. Ryder v. Department of Health and Human Resources, 400 So.2d 1123, 1126 (La. App. 1st Cir.1981). Repeated improper conduct after lesser disciplinary action has been taken, the totality of individual lesser offenses, or even a single particularly aggravated incident can be considered to constitute legal cause for dismissal. Ryder, 400 So.2d at 1126.
In reviewing whether a penalty is commensurate with the offense proven, an appellate court must apply the "abuse of discretion" or "arbitrary and capricious" standard of review. See Marsellus, 04-0860 at p. 8, 923 So.2d at 661. A conclusion of a public body is "capricious" when it has not substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. Likewise, the word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Sterling, 97-1960 at p. 13, 723 So.2d at 455.
The Commission determined that LSU established cause for terminating Norbert's employment based on her violation of the sick leave policy, as well as her dishonesty in requesting that she not work evenings or nights for LSU due to her need to take her medicine and rest her body, while working evenings for H & R Block. In particular, the Commission relied on an unpublished opinion of this court, Spencer v. LSU Health Sciences Center, Earl K. Long Medical Center, 2004 CA 0619 (La.App. 1st Cir.3/24/05), 898 So.2d 636, to support its determination that termination was appropriate.
In Spencer, a two-year employee was injured in an automobile accident, and due to these injuries, which rendered him "totally incapacitated," he received paid sick leave from his job at LSU from November 19, 2001 through January 9, 2002. However, during the time he was on sick leave, Spencer continued to work at his second job at the Chicken Shack doing light duty work. LSU terminated Spencer's employment, claiming that he committed payroll fraud by claiming to be "totally incapacitated" from his employment with LSU, while continuing to work at the Chicken Shack. The Commission ultimately upheld Spencer's termination, finding that he had misrepresented his job duties at LSU to his treating physician, and determining based on an accurate description of his usual duties at LSU and his duties at the *951 Chicken Shack, that Spencer was not incapacitated from his usual duties at LSU during the time he was taking paid sick leave. On appeal, this court affirmed the Commission's decision.
However, we note some key distinctions between Spencer and the instant case. First, Spencer was a short-term employee, having only worked for LSU for two years. However, Norbert was a long-term employee, having worked for LSU for twenty-two years. Additionally, though both Spencer and Norbert worked second jobs while on paid sick leave from LSU, the circumstances are substantially different. Spencer was a stock clerk supervisor for LSU, with eighty-five to ninety percent of his job duties involving taking care of paperwork. Based on Spencer's misrepresentation of his job duties at LSU, his treating physician determined that he was totally incapacitated from his employment with LSU and he received paid sick leave. However, during this time, Spencer continued to work six days and over thirty hours per week at the Chicken Shack as a lead/worker assistant supervisor.
Norbert, however, was an admission technician whose duties required her to move throughout the hospital. Norbert's physician indicated on her family medical leave request that she was to have "no work status" from March 8, 2004 through April 5, 2004. Despite being on paid sick leave and family medical leave based on her physician's recommendation, Norbert worked at H & R Block approximately two days a week for a total of about eight hours. However, based on the job descriptions in the record, Norbert's job duties at H & R Block were substantially different from her duties at LSU. At H & R Block, Norbert primarily sat at a desk and had assistance, whereas her job duties at LSU required her moving throughout the hospital.
Further, the Commission seems to analogize Norbert's dishonesty in requesting that she not work evenings or nights because of the need to take her medicine and rest her body with Spencer's dishonesty in misrepresenting his job duties to his treating physician. However, Spencer misrepresented his job duties so as to obtain sick leave to which he would not otherwise have been entitled. Norbert's request, however, was not an effort to defraud her employer and to obtain a benefit to which she was not entitled. Rather, it could be viewed as an effort to obtain a more convenient work schedule, whether to accommodate her injuries or her second job. Such dishonesty, while arguably impairing the efficient operation of LSU, does not rise to the degree of dishonesty found in Spencer.
Accordingly, we find that the facts of this case do not rise to the level of the particularly egregious conduct found in Spencer. Rather, the facts of this case are more analogous to those found in cases involving violation of sick leave policy and dishonesty that preceded Spencer, where suspension was determined to be the appropriate penalty. See Ferguson, 451 So.2d at 169 (upholding a forty-five day suspension for abuse of leave policy and insubordination); Jackson v. Department of Health and Hospitals, Hammond Developmental Center, CSC Docket Nos. 12335 and S-125262 (July 22, 1998) (modifying DHH's dismissal for violation of sick leave policy and dishonesty to a ninety-day suspension).
Therefore, after a careful review of the record as a whole, given the character, content, and proper weight of the evidence, we find that the penalty of termination constituted excessive discipline, not commensurate with the relative seriousness of the offenses proven, and that the Commission's decision to uphold that penalty was an abuse of discretion. Accordingly, we *952 reverse the Commission's decision insofar as it upholds LSU's termination of Norbert and remand this matter to the Commission for imposition of appropriate discipline, short of termination.

CONCLUSION
For the foregoing reasons, we affirm the portion of the Commission's decision finding legal cause for discipline, but reverse the portion of the Commission's decision upholding the penalty of termination. This matter is remanded to the Commission for determination of the appropriate discipline, short of termination, to be imposed. All costs of this appeal are to be borne by the appellant, Sharon Norbert.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
WHIPPLE, J., dissents and would affirm, finding the disciplinary action was acquired by appellant's acts of engaging in work duties while receiving sick leave benefits pursuant to a physician's "no work" order.
NOTES
[1] At the hearing on February 13, 2006, the parties agreed to submit the matter on stipulations, documents, and briefs. A decision was placed on hold pending this court's determination of Spencer v. LSU Health Sciences Center, Earl K. Long Medical Center, 2004 CA 0619 (La.App. 1st Cir.3/24/05) (unpublished opinion.) The matter was finally submitted on April 27, 2006.