STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2022 CA 0950

LESLIE McDANIEL

VERSUS

DOTD

Judgment Rendered: FEB 2 4 2023

* * * * * *

On appeal from the
State Civil Service Commission
State of Louisiana
Docket Number S-18736

Honorable David L. Duplantier, Chairman

* * * * * *

| | |
|---|---|
| Henry D.H. Olinde, Jr.<br>Baton Rouge, LA | Counsel for Plaintiff/Appellant<br>Leslie McDaniel |
| | |
| Darren Patin<br>Metairie, LA | Counsel for Defendant/Appellee<br>Louisiana Department of<br>Transportation and Development |

* * * * * *

BEFORE: GUIDRY, C.J., WOLFE, AND MILLER, JJ.

**GUIDRY, C.J.**

A state employee appeals a decision of the Civil Service Commission. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant Leslie McDaniel was a permanent employee of the Louisiana Department of Transportation and Development (DOTD). On March 8, 2021, Ms. McDaniel was advised by letter that she was being terminated from her position with DOTD, effective March 15, 2021. Ms. McDaniel appealed her termination to the Civil Service Commission. Following a hearing, a civil service referee, assigned by the Commission, ordered that Ms. McDaniel be reinstated to her position. The referee also awarded attorney's fees to Ms. McDaniel in the amount of $1,500.00. A review of the referee's decision was sought by DOTD. Thereafter, on June 8, 2022, the Commission reversed the decision of the referee, thereby upholding the termination of Ms. McDaniel's employment. This appeal followed with Ms. McDaniel contending that the Commission erred in the following respects:

1. The [Commission] committed error when it reversed its referee and found that [Ms.] McDaniel was provided with adequate due process.

2. The [Commission] committed error when it found that the imposition of discipline against [Ms.] McDaniel was warranted.

3. The [Commission] committed error when it held that termination was the appropriate penalty for [Ms.] McDaniel.

4. The [Commission] committed error when it reversed the referee's attorney's fee award.

## DISCUSSION

We first note that under La. Const. art. 10, § 12(A), the Civil Service Commission has the exclusive power and authority to hear and decide all removal and disciplinary cases, and the Commission may appoint a referee to take such testimony, hear, and decide such cases. The decision of a referee is subject to

2

review by the Commission on any question of law or fact upon the filing of a timely application for review with the Commission.[1] La. Const. art. 10, § 12(A). The final decision of the Commission is subject to review by the court of appeal on any question of law or fact. La. Const. art. 10, § 12(A). A reviewing court should not disturb the factual findings made by the Commission in the absence of manifest error.[2] Walters v. Department of Police of City of New Orleans, 454 So. 2d 106, 113 (La. 1984); Greenleaf v. DHH, Metropolitan Developmental Center, 594 So. 2d 418, 427 (La. App. 1st Cir. 1991), writ denied, 596 So. 2d 196 (La. 1992). Further, an appellate court should not reverse the Commission's determination of the existence of cause for a disciplinary action unless the decision is arbitrary, capricious, or an abuse of discretion. Walters, 454 So. 2d at 114.

In the matter herein, Ms. McDaniel assigns as error a lack of due process, arguing that her termination was predetermined and that she was not provided with a meaningful opportunity to respond to the charges against her. According to DOTD, Ms. McDaniel was in violation of DOTD policy and was terminated due to conduct unbecoming of a public employee, falsification, inappropriate or unprofessional behavior, and insubordination. DOTD proposed disciplinary action in the form of termination following the receipt of a text message from Ms.

---

[1] Civil Service Rule 13.36(f) provides that, after the Commission considers the application for review, along with the pleadings and exhibits, it may do any of the following:

1. Remand the appeal with instructions to the referee; or
2. Hold new hearings or take additional evidence or both, and render its own decision thereon.
3. Reverse or modify the Referee's decision on an issue of law.
4. Affirm the Referee's decision by denying the application for review.
5. Listen to pertinent portions of the sound recordings of the proceedings conducted before the Referee or read and review the transcript of the proceedings before the Referee, and, thereafter, reverse or modify the Referee's decision on an issue of fact, and/or take any of the actions specified in 1 through 4 above.

[2] In Stobart v. State, Department of Transportation and Development, 617 So. 2d 880, 882 (La. 1993), the supreme court indicated that, in order to reverse a factual finding made by the trier of fact: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

McDaniel to her supervisor and the appointing authority, Deidre Robert, DOTD executive counsel.[3] The text message contained a video titled, "Mark Taylor on the After Effect of January 6th on Truth Unveiled with Paul Oebel." The video is political and religious in nature and includes references to violence and warfare.[4] Following an investigation by DOTD on the origins of the text message and video, Ms. McDaniel was provided a pre-deprivation notice and offered the opportunity to respond in writing to DOTD's proposed disciplinary action against her.[5] Thereafter, Ms. McDaniel provided a written response regarding the matter.[6] Ms. McDaniel was then terminated by letter dated March 8, 2021.

Civil Service Rule 12.7 provides that when an appointing authority proposes to discipline or remove a permanent employee, the employee must be given oral or written notice of the proposed action, the factual basis for and a description of the evidence supporting the proposed action, and a reasonable opportunity to respond. In addition, as stated in Lange v. Orleans Levee District, 10-0140, p. 7 (La. 11/30/10), 56 So. 3d 925, 930, due process requires a reasonable opportunity to respond to the charges lodged against an individual.

Here, it is undisputed that Ms. McDaniel received written notice of the charges against her, including a description of the reasons in support thereof. While Ms. McDaniel questions whether she was afforded adequate due process, we note that in addition to Ms. McDaniel's opportunity to submit a written response to

---

[3] Ms. McDaniel was an administrative assistant reporting to DOTD executive counsel.

[4] The video also references a man on the beach, with a weapon next to him, praying to God to help him. The man is encouraged to pick up and use the weapon. Viewers are encouraged to pick up their swords. All parties agreed that the video was inappropriate for the workplace.

[5] The notice informed Ms. McDaniel that DOTD was considering disciplinary action against her in the form of termination. According to DOTD, Ms. McDaniel's denial of any knowledge of the text, video, and/or sending the same was less than truthful and insubordinate, regardless of the contents of the video.

[6] The pre-deprivation notice provided Ms. McDaniel three days to submit her response to Ms. Robert. Ms. McDaniel, however, submitted her written response to Human Resources because an incorrect facsimile number was provided in the pre-deprivation notice.

her February 25, 2021 pre-deprivation letter, Ms. McDaniel met with Ms. Robert more than once on January 11, 2021, to discuss the subject text message. Ms. McDaniel subsequently met with a representative from human resources as well as DOTD's undersecretary regarding the matter, and supplied written responses to the undersecretary's questions.

From our view, both Ms. McDaniel's formal and informal discussions and interactions with DOTD regarding the charges against her provided Ms. McDaniel with reasonable and meaningful opportunities to respond.[7] Accordingly, after reviewing the record herein, we conclude that the Commission was not clearly wrong in its finding that Ms. McDaniel was provided adequate due process and an opportunity to be heard. We find no merit in the assignment of error.

Ms. McDaniel further argues that the Commission erred when it found that the discipline against her was warranted and that the appropriate penalty was termination. Article 10, § 8(A) of the Louisiana Constitution provides that a classified employee may not be "subject to disciplinary action except for cause expressed in writing." Such "cause" is defined as "conduct that impairs the efficiency of the public service and bears a real and substantial relation to the efficient and orderly operation of the public service in which the employee is engaged." Dunlap v. Louisiana State University Health Sciences Center, 05-1605, pp. 4-5 (La. App. 1st Cir. 6/9/06), 938 So. 2d 109, 112. In reviewing whether a penalty is commensurate with the offense proven, an appellate court must apply the "abuse of discretion" or "arbitrary and capricious" standard of review. A conclusion of a public body is "capricious" when it does not have substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper

_____

[7] We also note that the termination letter indicates that Ms. McDaniel's response to the pre-deprivation notice was reviewed and considered.

weight thereof. Norbert v. LSU Health Sciences Center, 07-0161, p. 5 (La. App. 1st Cir. 11/2/07), 978 So. 2d 947, 950, writ denied, 08-0218 (La. 4/18/08), 978 So. 2d 348. Additionally, a decision by the Civil Service Commission is "arbitrary or capricious" if there is no rational basis for the action taken by the Civil Service Commission. Bannister v. Department of Streets, 95-0404, p. 8 (La. 1/16/96), 666 So. 2d 641, 647.

The Commission herein found that DOTD established the existence of cause for disciplinary action.[8] We agree. The facts as established by the Commission and set forth by the evidence of record show that after Ms. Robert received the subject text message from Ms. McDaniel, Ms. Robert called Ms. McDaniel into her office and questioned Ms. McDaniel about sending the text message, which Ms. McDaniel denied.[9] Subsequently, when Ms. Robert and Ms. McDaniel met again, Ms. McDaniel suggested that the text message was sent as a result of a hack to her Netflix account. Thereafter, during a formal investigation led by DOTD Undersecretary Major General Barry Keeling, Ms. McDaniel responded in writing, "No," when asked if she sent a text message to Ms. Robert on January 8, 2021. Ms. McDaniel gratuitously added to her statement, "I have no knowledge of this text that Ms. Robert says was sent."[10]

At the hearing before the referee, Candace Rustad, a human resources representative, stated in her testimony that she was "very surprised" that Ms. McDaniel continued to state that she did not send the text message, and opined that

---

[8] The appointing authority (DOTD) has the burden of proving that the conduct did in fact impair the efficiency and orderly operation of the public service. See La. Const. art. 10, § 8; Thornton v. DHHR, 394 So. 2d 1269, 1271 (La. App. 1st Cir. 1981). According to the Commission, Ms. McDaniel's "lack of transparency regarding the text message necessitated a full-scale investigation (and unnecessary use of resources for this purpose) and cost her the trust of the executive team with which she had a necessarily close working relationship."

[9] The text message was sent on January 8, 2021, and Ms. Robert and Ms. McDaniel first met on January 11, 2021.

[10] Ms. McDaniel later communicated to Human Resources that she was at lunch when the text message was sent.

there is a "level of trust lost" when you continue to deny something that has been proven.[11]

General Keeling, who believed the investigation and termination were warranted, stated that Ms. McDaniel was given the opportunity to state that the text was sent accidentally, but refused to do so. According to General Keeling, confidence in Ms. McDaniel was lost and Ms. McDaniel demonstrated to the agency that if something was going to make her look bad, she would lie about it. General Keeling further stated that Ms. McDaniel was not truthful with her appointing authority, "who happens to be [the] Executive Counsel within the executive suite," was not truthful with him, and would not "take advantage of the opportunities that [DOTD was] going to give her to show that there was some kind of mitigating circumstance."

Ms. Robert testified that the particularly aggravating aspect of Ms. McDaniel's behavior was "her lying to me and continuing to lie to General Keeling, and everybody ... ." According to Ms. Robert, Ms. McDaniel was terminated for continuing to perpetuate a lie. Ms. Robert explained that Ms. McDaniel's actions violated Ms. Robert's trust and undermined the trust of the whole organization. Ms. Robert also stated, "[Ms. McDaniel's] actions go to the heart of how close we work every day. ... We rely very heavily on our administrative assistants, not only for their professionalism, assistance, and performance of their jobs, but ... also the trust, the confidentiality, and the maintenance of what we do as an Executive staff within the Agency."

Ms. McDaniel, in her written response to the pre-deprivation notice, stated, among other things, "I believe that if you did receive a [text message] from my

---

[11] Ms. Rustad advised against termination because she did not think the decision would "hold up" on appeal. However, Michelle Sanders, director of Human Resources, testified that the determination of the appropriate discipline for Ms. McDaniel was in the "providence of the appointing authority."

personal phone it was sent in error due to the app presence and phone defect." At the hearing before the referee, Ms. McDaniel explained that at some point she realized the text message may have been unintentionally sent or "copied and pasted" from the Group Me app on her mobile phone.[12] Ms. McDaniel also stated that she deleted the text message after she sent it, and suggested that her phone was broken. However, it was not until after receiving the pre-deprivation notice, and after the investigation was complete, that Ms. McDaniel suggested that the text message may have come from her Group Me app and/or that her phone was broken.

In the present matter, we conclude, as did the Commission, that Ms. McDaniel's conduct following the transmission of the January 8 text message impaired the productivity of DOTD's executive suite and had a detrimental impact on the supervisor/employee relationship, thereby constituting cause for disciplinary action. Seemingly evasive and misleading in her responses to DOTD, Ms. McDaniel's actions prompted the need for an internal investigation wherein DOTD executives found her to be untruthful, and where she eroded the trust in her amongst members of the executive team.[13] Deference should be given to a supervisor's assessment that lack of trust in her employee will impair the efficient operation of a department in which an employee must provide truthful information. See generally Duckett v. Jefferson Parish Department of Public Works-Streets, 20-452, p. 13 (La. App. 5th Cir. 11/3/21), 330 So. 3d 1209, 1219. DOTD established that Ms. McDaniel's conduct violated department policies, and we cannot say that Ms. McDaniel's lack of truthfulness did not bear a real and substantial relationship

---

[12] According to DOTD, Ms. McDaniel was informed about the nature of the video and/or clicked on the link to the video on January 11, 2021. According to Ms. McDaniel, she first saw the video after receiving the pre-deprivation notice.

[13] We note that Ms. McDaniel was employed by the state for approximately 20 years with no previous disciplinary action.

to the efficient operation of DOTD's executive suite. Cf. Narcisse v. Department of Police, 12-1267, p.18 (La. App. 4th Cir. 3/6/13), 110 So. 3d 692, 702. We thus conclude that the Commission's determination concerning the issue of cause for disciplinary action is supported by the record; it is neither manifestly erroneous nor an abuse of discretion.

Having affirmed the Commission's determination that there was sufficient cause to discipline Ms. McDaniel, this court must also determine whether the penalty imposed upon Ms. McDaniel was proportionate to the offense committed. In doing so, we emphasize that reviewing courts should not second guess the appointing authority's decision, but only intervene when decisions are arbitrary and capricious or characterized by an abuse of discretion. Cole v. Division of Administration, 14-0936, p. 6 (La. App. 1st Cir. 1/26/15), 170 So. 3d 180, 184-185.

In the present matter, DOTD's Policy and Procedure Memorandum 29 allows for disciplinary action, including termination, to be imposed for violations of policy, and DOTD's Policy and Procedure Memorandum 26 allows for termination for cause.[14] And as discussed above, Ms. McDaniel's actions eroded her supervisor's trust in her, and likely any expectation of credibility or dependability. Lack of truthfulness is a rational basis for termination of a public employee. See generally Rodriquez v. Board of Commissioners, Port of New Orleans, 344 So. 2d 436, 438-439 (La. App. 1st Cir. 1977); Duckett, 20-452 at pp. 12-13, 330 So. 3d at 1219. Accordingly, we find that the Commission's decision to terminate the appellant was neither arbitrary nor capricious. We find no merit in the assignment of error.[15]

---

[14] General Keeling also stated in his affidavit that "there was no opportunity to reassign Ms. McDaniel to any other position ... ."

[15] Based on our conclusions herein, we find no merit in the contention that the Commission erred when it reversed the referee's attorney's fee award to Ms. McDaniel.

## CONCLUSION

For the above and foregoing reasons, the June 8, 2022 decision of the Civil Service Commission is affirmed. All costs of this appeal are assessed to the plaintiff/appellant, Leslie McDaniel.

**AFFIRMED.**