GUIDRY, J.
A state employee serving with permanent status appeals a decision of the State Civil Service Commission ("Commission") upholding an agency's disciplinary action to terminate his employment. Based on our review, we affirm.
FACTS AND PROCEDURAL HISTORY
Derry Isaac, Jr. was employed by the Louisiana Department of Health and Hospitals[1] at the Pinecrest Supports and Services Center (appointing authority[2] ), in the Office for Citizens with Developmental Disabilities, as a Residential Services Specialist 5. He served with permanent status. By a certified letter dated March 24, 2017, Shannon H. Thom, the administrator of the Pinecrest Supports and Services Center, notified Mr. Isaac that he was being terminated, effective April 7, 2017, for insubordination *1109 and failing to fully cooperate with an investigation in violation of the rules 39 and 44 of the Pinecrest Rules of Conduct, because he failed to answer questions during a polygraph examination.
Mr. Isaac appealed his termination to the Commission. The referee[3] assigned by the Commission to decide the matter found the evidence supported the charge and the disciplinary action imposed. The referee's decision became the final decision of the Commission when the Commission denied Mr. Isaac's application for review. See La. Const. art. X, § 12 (A) and Civil Service Rule 13.36(g). Mr. Isaac appeals that decision herein.
ASSIGNMENTS OF ERROR
In this appeal, Mr. Isaac contends that the referee erred in upholding the appointing authority's disciplinary action in the following respects:
1) The referee and the Civil Service Commission erred in finding that the appointing authority proved by [a] preponderance of the evidence that appellant, Derry [Isaac], Jr. refused to answer questions during the polygraph examination.
2) The referee and the Civil Service Commission erred in finding that the appellant, Derry [Isaac], Jr. was insubordinate and failed to fully cooperate with an investigation thus violating Pinecrest Rules of Conduct Nos. 39 & 44.
3) The referee and the Civil Service Commission erred in failing to find that the appointing authority acted arbitrarily and capriciously in terminating appellant, a loyal 15 year employee.
STANDARD OF REVIEW
Generally, decisions of Civil Service Commission referees are subject to the same standard of review as decisions of the Commission itself. Decisions of the Commission are subject to the same standard of review as a decision of a district court. Usun v. LSU Health Sciences Center Medical Center of Louisiana at New Orleans, 02-0295, p. 4 (La. App. 1st Cir. 2/14/03), 845 So.2d 491, 494. Factual determinations should not be reversed or modified unless clearly wrong or manifestly erroneous. Gorbaty v. Department of State Civil Service, 99-1389, p. 4 (La. App. 1st Cir. 6/23/00), 762 So.2d 1159, 1162, writ denied, 00-2534 (La. 11/13/00), 774 So.2d 147. However, in evaluating the determination as to whether the disciplinary action taken by the appointing authority is based on legal cause and commensurate with the infraction, the reviewing court should not modify or reverse the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. Usun, 02-0295 at p. 4, 845 So.2d at 494.
DISCUSSION
In his first two assignments of error, Mr. Isaac asserts that the referee erred in finding that the appointing authority proved by a preponderance of the evidence that he refused to answer questions during the polygraph examination and that his actions constituted insubordination.
The primary focus of Mr. Isaac's argument is that because he did not outright refuse or plainly state that he refused to answer any questions, the appointing authority did not have grounds for finding that he refused to submit to the polygraph examination. At the hearing before the referee, Mr. Isaac testified that he appeared for the polygraph test on the date scheduled, and the examiner informed him that he would be questioning him about a *1110 November 2016 complaint of abuse. Mr. Isaac said he explained to the examiner that he had been advised by his attorney[4] that he did not have to answer questions about the incident because he had been cleared.[5] In response, Mr. Isaac said the examiner concluded the meeting without asking him any questions.
Mr. Isaac acknowledged that he sought the advice of a pre-paid attorney after he was directed to report for the polygraph test, and consistent with the advice he received, he believed that he did not have to answer questions about the November 2016 incident. He testified that he indicated to the examiner that he did not have any objections to taking the polygraph test. As he explained, "I told [the examiner] that I was cleared. I said, any questions you ask me, I agree to answer. I agree to the test, but that incident, I've been cleared." This testimony prompted the following question from the referee: "So the point was, you couldn't answer any questions that related to that November incident; is that what you are saying?" Mr. Isaac responded, "[y]es, sir."
As a follow up to the referee's question, on cross examination, the following colloquy transpired:
Q. And was it clear to you that the - - that the polygraph was about that incident?
A. Yes. He told me that the polygraph was.
Q. Right. So that - - that's what happened based on your - - if it would have been about something else, you would have - - it would have gone forward?
A. Yes, sir.
Q. But because it was about an incident you felt you were cleared of, you told him on advice of counsel that you didn't have to answer; is that right?
A. Yes, sir.
Q. Okay. And at that point, he said, okay?
A. Yes.
While Mr. Isaac argues that the examiner took it upon himself not to administer the polygraph test, the examiner's actions were clearly induced by Mr. Isaac's statement, which resulted in Mr. Isaac not taking the polygraph test he had been ordered to take. An employee must follow an order unless it calls upon the employee to do something illegal, immoral, unethical, or in dereliction of duties. Paulin v. Department of Health and Hospitals. Office of Behavioral Health, 13-1916, p. 6 (La. App. 1st Cir. 6/6/14), 146 So.3d 264, 269. Refusing to obey orders constitutes insubordination and is an action which, by its very nature, impairs the efficient operation of public service, thereby justifying disciplinary action. Cole v. Division of Administration, 14-0936, p. 7 (La. App. 1st Cir. 1/26/15), 170 So.3d 180, 185, writ not considered, 15-0401 (La. 5/1/15), 169 So.3d 367. A passive refusal or a slowdown in doing the job can just as well amount to insubordination. Jones v. Dept. of Health & Human Resources, 430 So.2d 1203, 1205 (La. App. 1st Cir. 1983).
The order from Mr. Isaac's superior was for him to take the polygraph test. And contrary to Mr. Isaac's assertion, the failure of the examiner to administer the test *1111 was not an independent and separate act of the examiner, but was an act prompted and induced by Mr. Isaac. As Mr. Isaac's testimony reveals,[6] he was amenable to answering questions about anything except the November 2016 incident, and as the polygraph test was solely about that incident, his actions amounted to a refusal to take the test. We therefore do not find any manifest error in the referee's determination that the appointing authority adequately proved that Mr. Isaac refused to take the polygraph test and that his refusal amounted to insubordination.
In his final assignment of error, Mr. Isaac argues that the appointing authority acted arbitrarily and capriciously in terminating his employment. Article X, Section 8(A) of the Louisiana Constitution provides that a classified employee may not be "subject to disciplinary action except for cause expressed in writing." Such "cause" is defined as "conduct that impairs the efficiency of the public service and bears a real and substantial relation to the efficient and orderly operation of the public service in which the employee is engaged." Dunlap v. Louisiana State University Health Sciences Center, 05-1605, pp. 4-5 (La. App. 1st Cir. 6/9/06), 938 So.2d 109, 112.
In reviewing whether a penalty is commensurate with the offense proven, an appellate court must apply the "abuse of discretion" or "arbitrary and capricious" standard of review. A conclusion of a public body is "capricious" when it does not have substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. Likewise, the word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Norbert v. LSU Health Sciences Center, 07-0161, p. 5 (La. App. 1st Cir. 11/2/07), 978 So.2d 947, 950, writ denied, 08-0218 (La. 4/18/08), 978 So.2d 348.
At the hearing before the referee, Amanda Pittman, the associate administrator at the Pinecrest Supports and Services Center, explained how Mr. Isaac's failure to take the polygraph test impaired the efficient operation of the appointing authority. Ms. Pittman testified that following the initial investigation of the November 2016 incident, the appointing authority received a deficiency rating from Health Standards, a surveying entity for the Centers for Medicaid and Medicare services, which found that the appointing authority had "returned Mr. Isaac to client care without a thorough and complete investigation into the allegation of abuse." She said the deficiency rating was based on the fact that without the polygraph test, the appointing authority did not have a record of Mr. Isaac's full testimony regarding the November 2016 incident.
Ms. Pittman explained that two separate, external investigations were conducted regarding the November 2016 incident, one by the Department of Children and Family Services ("DCFS") and the other by Adult Protective Services ("APS"). The letter Mr. Isaac received stating that the findings of the investigation were inconclusive came from the DCFS;[7] however, Ms. *1112 Pittman said the investigation by APS was still pending. Ms. Pittman acknowledged that Mr. Isaac was returned to work based solely on the DCFS investigation and that the appointing authority was "found wrong for doing so by Health Standards." Ms. Pittman said that at one point, the appointing authority was in "immediate jeopardy," as they had only 14 days to remedy the problem or the appointing authority would be closed down.
One specific act of willful disobedience or insubordination may be sufficient legal cause for termination. Ben v. Housing Authority of New Orleans, 03-1664, p. 5 (La. App. 1st Cir. 5/14/04), 879 So.2d 803, 807. Moreover, Louisiana courts have long recognized that a civil service employee may be ordered to take a polygraph examination, and that the employee can be suspended or discharged for failing to do so. See Evans v. DeRidder Municipal Fire, 01-2466, p. 6 (La. 4/3/02), 815 So.2d 61, 66-67, cert. denied, 537 U.S. 1108, 123 S.Ct. 884, 154 L.Ed.2d 779 (2003) ; Jones v. Department of Public Safety and Corrections, 04-1766, pp. 2-3 (La. App. 1st Cir. 9/23/05), 923 So.2d 699, 700. Ms. Pittman's testimony established how the administration of the polygraph test regarding the November 2016 incident was critical to the efficient operation of the appointing authority. As Mr. Isaac's statement to the polygraph examiner caused the test not to be administered, her testimony establishes that Mr. Isaac's conduct substantially effected the efficient and orderly operation of appointing authority. Hence, we find the evidence sufficiently supports the disciplinary action imposed. Accordingly, we reject Mr. Isaac's final assignment of error, as the decision to terminate his employment was neither arbitrary nor capricious.
CONCLUSION
Therefore, considering the foregoing review of the evidence and the applicable law, we affirm the decision of the State Civil Service Commission. All costs of this appeal are assessed to the appellant, Derry Isaac, Jr.
AFFIRMED.

Pursuant to 2016 La. Acts, No. 300, the Louisiana Legislature renamed and recreated the "Department of Health and Hospitals" as the "Louisiana Department of Health," effective June 2, 2016.

Civil Service Rule 1.4 defines "appointing authority" as "the agency, department, board, or commission, and the officers and employees thereof authorized by statute or by lawfully delegated authority to make appointments to positions in the State Service."

See Civil Service Rule 13.20.

The attorney to which Mr. Isaac referred was a lawyer with a pre-paid legal service and not the counsel who represents him in this appeal and in the proceedings below.

Mr. Isaac's characterization of the resolution of the complaint is not accurate. Following an investigation of the complaint against Mr. Isaac, the findings were deemed inconclusive because they neither refuted nor confirmed, by agency standards, the allegations of abuse.

At another point in his testimony, Mr. Isaac stated that when the examiner informed him that he would be questioning him about the November 2016 incident, he told the examiner what his attorney had told him. Mr. Isaac then testified, "[a]nd [the examiner] asked me again, I guess for the record or whatever, ... and I told him again, that my attorney told me that I shouldn't have to answer any questions, that I was cleared."

The letterhead, as well as the text, of the letter received by Mr. Isaac indicates that it was from the Office of Community Services in the Louisiana Department of Social Services. Pursuant to 2010 La. Acts, No. 877, § 3, the Louisiana Legislature directed the Louisiana Law Institute "to change all references to the 'Department of Social Services' to the 'Department of Children and Family Services' and all references to either the 'office of community services' or 'the office of family support' to the 'office of children and family services' throughout the Louisiana Revised Statutes of 1950." Thus, the letter and the investigation referred to therein, are properly attributable to DCFS.